## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
------------------------------------------------------------ x
```
J. MICHAEL PEARSON,                    :      Civil Action No.
                                       :
                                       :
                    Plaintiff,         :
                                       :
          v.                           :
                                       :
VALEANT PHARMACEUTICALS                :
INTERNATIONAL, INC.                    :
                                       :
                    Defendant.         :
```
------------------------------------------------------------ x
```

## COMPLAINT

Plaintiff J. Michael Pearson, by and through his undersigned counsel, files this Complaint against Defendant Valeant Pharmaceuticals International, Inc. ("Valeant") for breach of contract and violations of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 *et seq.*, and in support thereof respectfully alleges:

## INTRODUCTION

1.      From 2008 to 2016, Mr. Pearson served as Chief Executive Officer ("CEO") of Valeant.  During his tenure, Mr. Pearson and Valeant entered into a number of employment agreements providing for various forms of compensation, including equity awards.

2.      Upon his departure from Valeant in or around May 2016, Valeant and Mr. Pearson entered into a Separation Agreement pursuant to which Valeant promised, among other things, to deliver to Mr. Pearson the equity that he had previously been awarded.  Valeant further promised to extend to Mr. Pearson certain other payments and

benefits pursuant to the Separation Agreement, including a lump-sum severance payment in the amount of $9 million.  Valeant initially satisfied certain of its obligations under the Separation Agreement, including remitting to Mr. Pearson the $9 million severance payment in full.

3.      Recently, however, Valeant has made an abrupt decision simply to stop honoring its full obligations, without even attempting to articulate any legal or factual basis for its sudden change of course.  Despite fulfilling some of its contractual commitments, Valeant is now refusing to honor its remaining contractual obligations to Mr. Pearson.

4.      Delivery of Mr. Pearson's vested shares pursuant to the Separation Agreement was due on or about November 3, 2016, six months and one business day following the date Mr. Pearson's employment with Valeant ended.  Despite Mr. Pearson's attempts to resolve this dispute outside of the courts, and to his severe detriment, Valeant has refused to deliver the shares and to meet certain of its other remaining obligations, providing no factual or legal support for its refusal.

## PARTIES

5.      Mr. Pearson is a citizen of the State of New Jersey.

6.      Valeant is a corporation formed under the laws of British Columbia, Canada.  Its principal place of business is located at 2150 St. Elzéar Boulevard West, Laval, Quebec, Canada, H7L 4A8.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, Plaintiff is a citizen of New Jersey and Defendant is a company incorporated and headquartered in Canada.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the cause of action herein occurred in this District.

## FACTS

9.      Defendant Valeant is a multinational corporation in the business of development, manufacturing and marketing of specialty pharmaceuticals and medical devices.  Its stock is publicly traded on both the New York Stock Exchange and the Toronto Stock Exchange.

10.     Plaintiff Pearson served as CEO of Valeant from on or about February 1, 2008 to on or about May 2, 2016.

11.     The parties entered into the Second Amended and Restated Employment Agreement as of January 7, 2015 ("2015 Employment Agreement"), attached hereto as Exhibit A.

12.     Pursuant to the terms of the 2015 Employment Agreement, Plaintiff did not receive any base salary.  Ex. A § 3(a).  Instead, his compensation was wholly in the form of cash bonuses and equity awards.  *Id.* §§ 3(b), 4.

13.      During his tenure as CEO, Plaintiff received multiple equity awards,

3

listed in Section 4(f) of the Employment Agreement.  *Id.* § 4(f).

**Terms of the Separation Agreement**

14.     Mr. Pearson and Valeant entered into a Separation Agreement dated as of May 26, 2016 ("Separation Agreement"), which the parties agreed is governed by New Jersey law.  A copy of the Separation Agreement is attached hereto as Exhibit B.

15.     Pursuant to Section 3(a) of the Separation Agreement, Mr. Pearson was entitled to receive "[a]n annual bonus in respect of the 2016 fiscal year pro-rated to reflect the portion of the 2016 fiscal year elapsed prior to the Termination Date . . . . payable within 60 days of the Termination Date."  Ex. B § 3(a).

16.     Pursuant to Section 3(b) of the Separation Agreement, Valeant agreed to pay Mr. Pearson "[a] severance payment equal to $9 million, payable in lump sum within 60 days of the Termination Date."  *Id.* § 3(b).

17.     Pursuant to Section 3(c) of the Separation Agreement, Valeant agreed to "continue[] coverage for [Mr. Pearson] and his dependents under any health, medical, dental or vision program or policy on the same basis as active employees, at the rates applicable to active employees" for a period of two years.  *Id.* § 3(c).

18.     Pursuant to Section 3(e) of the Separation Agreement, "[f]or a period of two (2) years following the Termination Date, (i) Valeant shall make available to Mr. Pearson office space in a building located at 14 Main Street, Suite 140, Madison, New Jersey . . .  and (ii)Valeant shall provide Mr. Pearson with nonexclusive access to an executive administrative assistant at Valeant and IT support."  *Id.* § 3(e).

19.     Pursuant to Section 3(d) of the Separation Agreement, "[a]ny equity

4

compensation awards held by Mr. Pearson shall be treated in accordance with Section 9(c) of the 2015 [Employment] Agreement." *Id.* § 3(d).

20.     Valeant initially satisfied, and is currently satisfying, some of its obligations under the Separation Agreement.  For example, Valeant paid Mr. Pearson the pro-rated bonus for 2016 in accordance with Section 3(a); paid Mr. Pearson the $9 million severance payment in accordance with Section 3(b); has provided and has indicated in writing through counsel that it will continue to provide insurance coverage to Mr. Pearson in accordance with Section 3(c); and has provided and has indicated in writing through counsel that it will continue to provide office space and administrative assistant and IT support to Mr. Pearson in accordance with Section 3(e).

21.     As detailed below, however, Valeant has not treated Mr. Pearson's equity compensation awards in accordance with Section 3(d).

22.     Mr. Pearson fully satisfied his obligations under the Separation Agreement by executing the general release of claims as required pursuant to Section 3, making himself reasonably available to cooperate with Valeant and its affiliates pursuant to Section 8, honoring the non-disparagement provision contained in Section 7, and honoring the restrictive covenants and related duties reflected in Sections 6 and 9.

### Treatment of Outstanding Equity

23.     Pursuant to Section 3(d) of the Separation Agreement, Valeant is required to treat the equity compensation awards held by Mr. Pearson in accordance with Section 9(c) of the 2015 Employment Agreement.  Ex. B § 3(d).

24.     Section 9(c)(1) of the 2015 Employment Agreement states that "[t]he Company shall pay to [Mr. Pearson] any Accrued Compensation."  Ex. A § 9(c)(1).

25.     "Accrued Compensation" is a defined term in the 2015 Employment Agreement, and includes "equity and incentive awards, to the extent previously vested." *Id.* § 9(a)(3).

26.     According to the Valeant proxy statement filed with the Securities and Exchange Commission on April 29, 2016 ("2016 Proxy Statement"), a copy of which is attached hereto as Exhibit C, 3,038,602 shares of Valeant stock have vested to Mr. Pearson, consisting of 580,676 restricted share units and 2,457,926 performance share units.  Ex. C at 41.

27.     The 2015 Employment Agreement further states that "each unvested stock option outstanding on the date hereof and held by [Mr. Pearson] at the time of such termination shall vest in full and remain exercisable for one year following termination (but in no event beyond the expiration of the original term)."  Ex. A § 9(c)(5).

28.     According to the 2016 Proxy Statement, Mr. Pearson was granted the option to purchase 500,000 shares of Valeant stock on August 23, 2011, with an exercise price of $54.76 per share.  Ex. C at 61.

**Valeant's Failure to Deliver Mr. Pearson's Outstanding Vested Equity Awards**

29.     Pursuant to Section 11 of the Separation Agreement:

amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to this [Separation] Agreement during the six (6) month period immediately following Mr. Pearson's separation from service shall instead be paid on the first business day after the date that is

6

six (6) months following his termination of employment (or upon his death, if earlier).

Ex. B § 11.

30.     Mr. Pearson was entitled to receive delivery of all outstanding vested equity awards six months and one business day following his separation date of May 2, 2016.

31.     Valeant did not deliver the outstanding vested equity awards to Mr. Mr. Pearson within six months and one business day after May 2, 2015, or within the 60-day grace period thereafter permitted under the Separation Agreement, and Valeant has indicated that it will not honor this obligation.

32.     Mr. Pearson has incurred and continues to incur monetary damages as a result of Valeant's failure to timely deliver the outstanding vested equity awards.

33.     Pursuant to the Separation Agreement, Valeant is also obligated to honor the exercises of any stock options held by Mr. Pearson.  Ex. B § 3(d); Ex. A § 9(c)(5). Upon information and belief, Valeant will not honor any attempt made by Mr. Pearson to exercise his stock options.

**Breach of Consulting Provisions of the Separation Agreement**

34.     The parties agreed that Mr. Pearson would serve as a consultant to Valeant for a term expiring on December 31, 2017 (the "Initial Consulting Period").  Ex. B § 4(a).

35.     Mr. Pearson satisfied his contractual obligations under Section 4 of the Separation Agreement by making himself reasonably available to consult with Valeant as required.

36.     Valeant "agree[d] to pay Mr. Pearson a fee of (i) $83,333 for each month (pro-rated for partial months) that Services are performed through the end of 2016, and (ii) $15,000 for each month (pro-rated for partial months) that services are performed after 2016." *Id*. § 5(a).

37.     Valeant had the right to terminate the Consulting Period at any time upon written notice. *Id*. § 4(a).  Valeant exercised this right on or about January 13, 2017.

38.     Valeant agreed to "pay Mr. Pearson any unpaid fees that would have been due to Mr. Pearson through the end of the Initial Consulting Period" within 30 days of termination of the Consulting Period.  Ex. B § 5(b).

39.     Valeant has not paid Mr. Pearson $180,000 for the remainder of the Initial Consulting Period as required by the Separation Agreement.

### Valeant's Failure to Articulate Reasons in Law or Fact for Its Failure to Comply with the Separation Agreement

40.     Concerned about the potential tax penalties that may result from delayed delivery of the vested equity awards, Mr. Pearson's counsel contacted Valeant's counsel via email on or about January 9, 2017, in a good faith effort to resolve the delay in delivery.

41.     On or about January 13, 2017, Valeant's Executive Vice President and General Counsel, Christina Ackermann, responded to Mr. Pearson's counsel, stating that "[t]he Board has reviewed the matter and determined that the shares will not be released to Mike Pearson due to the circumstances that Valeant finds itself in at this time."

42.     On or about January 17, 2017, Mr. Pearson's counsel sent a letter to

Ms. Ackermann demanding confirmation that Valeant would deliver Mr. Pearson's vested shares by February 14, 2017.

43.    On or about January 23, 2017, Valeant's outside counsel sent a letter to Mr. Pearson's counsel stating that, "Valeant believes it would be inappropriate or inequitable in the current environment for Mr. Pearson to receive additional compensation – to the tune of millions of dollars – at a time when countless other Valeant employees have been asked to sacrifice for the good of the company and its shareholders."

44.    According to the Valeant proxy statement filed with the Securities and Exchange Commission on April 23, 2017 ("2017 Proxy Statement"), a copy of which is attached hereto as Exhibit D, Valeant's board made a determination in December 2016 that Valeant was "not in a position to make any further payments to Mr. Pearson, including in connection with his then-outstanding equity awards."  Ex. D at 53.

45.    Valeant has not articulated any legal or factual basis for its disavowal of its contractual obligations.

## First Cause of Action

### (Breach of Contract)

46.    Mr. Pearson repeats and realleges the allegations set forth above as though each were set forth herein.

47.    The Separation Agreement is a valid and binding written contract between Mr. Pearson and Valeant made for valid consideration and governed by New Jersey law.

48.    Mr. Pearson has performed all of his obligations under the Separation

9

Agreement.

49.     Valeant unjustifiably and inexcusably breached the Separation Agreement

by, among other things, failing to deliver Mr. Pearson's 3,038,602 vested shares and

failing to pay Mr. Pearson $180,000 for the remainder of the Initial Consulting Period.

50.     As a direct and proximate result of Valeant's unjustifiable and inexcusable

breaches of the Separation Agreement, Mr. Pearson has suffered and will continue to

suffer injuries for which Valeant is liable.

## Second Cause of Action

### (New Jersey Wage Payment Law)

51.     Mr. Pearson repeats and realleges the allegations set forth above as though

each were set forth herein.

52.     Because the vested shares due to Mr. Pearson constitute wages under the

New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 *et seq.*, Valeant has violated the

statute by failing to deliver them.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief:

     a.  An order decreeing that Defendant deliver the vested shares of
        Valeant Pharmaceuticals International, Inc. stock as agreed in
        Section 3(d) of the Separation Agreement and Section 9(c) of the
        2015 Employment Agreement;

     b.  Monetary damages, in an amount to be determined, for
        Defendant's failure to timely deliver the vested shares of Valeant
        Pharmaceuticals International, Inc. stock as agreed in Section 3(d)

of the Separation Agreement and Section 9(c) of the 2015 Employment Agreement;

c.  An order decreeing that Defendant must honor Mr. Pearson's ability to exercise his outstanding stock option awards as agreed in Section 3(d) of the Separation Agreement and Section 9(c) of the 2015 Employment Agreement;

d.  An order decreeing that Defendant pay Mr. Pearson $180,000 for the remainder of the Initial Consulting Period in accordance with Section 5(b) of the Separation Agreement;

e.  Monetary damages, to the extent calculable, in an amount to be determined at trial;

f.  Pre- and post-judgment interest;

g.  Attorney's fees and costs; and

h.  Such further relief as the Court deems proper.

Dated: March 27, 2017

Respectfully submitted,

**BLANK ROME LLP**

By: /s/ Stephen M. Orlofsky
      STEPHEN M. ORLOFSKY
      New Jersey Resident Partner
      New Jersey Bar No. 012431974
      SCOTT F. COOPER
      New Jersey Bar No. 53631992
      orlofsky@blankrome.com
      cooper@blankrome.com
      301 Carnegie Center, 3rd Floor
      Princeton, NJ 08540
      Telephone:  (609) 750-7700
      Facsimile:  (609) 897-7286

*Of counsel:*

      **DEBEVOISE & PLIMPTON LLP**
      JYOTIN HAMID (*pro hac vice*
      application to be filed)
      TRICIA B. SHERNO (*pro hac vice*
      application to be filed)
      jhamid@debevoise.com
      tbsherno@debevoise.com
      919 Third Avenue
      New York, New York 10022
      Telephone:  (212) 909-6000

      *Counsel to Plaintiff J. Michael Pearson*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

The undersigned certifies that the matter in controversy is not the subject of any

other action pending in any court, or of any pending arbitration or administrative

proceeding.


Dated: March 27, 2017


**BLANK ROME LLP**

By:  /s/ Stephen M. Orlofsky
      STEPHEN M. ORLOFSKY
      New Jersey Resident Partner
      New Jersey Bar No. 012431974
      SCOTT F. COOPER
      New Jersey Bar No. 53631992
      orlofsky@blankrome.com
      cooper@blankrome.com
      301 Carnegie Center, 3rd Floor
      Princeton, NJ 08540
      Telephone:  (609) 750-7700
      Facsimile:  (609) 897-7286

*Of counsel:*

**DEBEVOISE & PLIMPTON LLP**
JYOTIN HAMID (*pro hac vice*
application to be filed)
TRICIA B. SHERNO (*pro hac vice*
application to be filed)
jhamid@debevoise.com
tbsherno@debevoise.com
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-6000

*Counsel to Plaintiff J. Michael Pearson*

13