NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| J. MICHAEL PEARSON, | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 17-1995-BRM-DEA |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., | : |
| Defendant. | : OPINION |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Valeant Pharmaceuticals International, Inc.'s ("Valeant") Motion to Compel Arbitration and Dismiss the Proceedings. (ECF No. 7.) Plaintiff J. Michael Pearson opposes the Motion. (ECF No. 14.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Valeant's Motion is **GRANTED** and the case is **CLOSED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises from a dispute over whether a Second Amended and Restated Employment Agreement ("2015 Employment Agreement") (ECF No. 1-1, Ex. A), containing an arbitration provision, was superseded by a Separation Agreement (ECF No. 1-1, Ex. B) that does not contain an arbitration provision. Pearson was the Chief Executive Officer of Valeant between February 1, 2008, and May 2, 2016. (Compl. (ECF No. 1) ¶ 10.) During his tenure, Pearson and Valeant entered into a number of employment agreements governing the terms of his employment. (*Id.* ¶ 1.)

On January 7, 2015, the parties entered into the 2015 Employment Agreement. (*Id.* ¶ 11.) The 2015 Employment Agreement contains terms concerning Pearson's compensation and benefits (including the equity awards principally at issue in the complaint), the different circumstances under which Pearson could be terminated the consequences of termination under those different circumstances, and various other obligations. (*See* ECF No. 1-1, Ex. A.) The 2015 Employment Agreement is governed by New Jersey law and contains an arbitration provision stating, in relevant part:

> If any legally actionable dispute arises under this Agreement or otherwise which cannot be resolved by mutual discussion between the parties, then [Valeant] and [Pearson] each agree to resolve that dispute by binding arbitration before an arbitrator experienced in employment law. Said arbitration will be conducted in accordance with the rules applicable to employment disputes of the Judicial Arbitration and Mediation Services ("JAMS") and the law applicable to the claim. . . . The parties agree that this agreement to arbitrate includes any such disputes that [Valeant] may have against [Pearson], or [Pearson] may have against [Valeant] and/or its related entities and/or employees, arising out of or relating to this Agreement, or [Pearson]'s employment or [Pearson]'s termination including, but not limited to, any claims of discrimination or harassment in violation of applicable law and any other aspect of [Pearson]'s compensation, employment, or [Pearson]'s termination. The parties further agree that arbitration as provided for in this Section 15(h) is the exclusive and binding remedy for any such dispute and will be used instead of any court action, which is hereby expressly waived, except for any request by any party for temporary, preliminary or permanent injunctive relief pending arbitration in accordance with applicable law or for breaches by [Pearson] of [Pearson]'s obligations under Sections 12 or 13 above or an administrative claim with an administrative agency.

(*Id.* at 16-17.)

Pearson alleges he did not receive any base salary pursuant to Section 3(a) of the 2015 Employment Agreement. (ECF No. 1 ¶ 12.) "Instead, his compensation was wholly in the form of

2

cash bonuses and equity awards." (*Id.*) Pearson admits to receiving multiple equity awards, listed in Section 4(f) of the 2015 Employment Agreement. (*Id.* ¶ 13.)

The parties' employment relationship ended in May 2, 2016, and, instead of adhering to the separation provisions in the 2015 Employment Agreement, they entered into a Separation Agreement dated May 26, 2016. (ECF No. 1-1, Ex. B at 1.) The Separation Agreement governs the compensation Pearson was to receive in connection with his termination. (*Id.*) Specifically, Valeant agreed to, in part: (1) pay Pearson "[a]n annual bonus in respect of the 2016 fiscal year pro-rated to reflect the portion of the 2016 fiscal year elapsed prior to the Termination Date payable within 60 days of the Termination Date"; (2) pay Pearson "[a] severance payment equal to $9 million, payable in lump sum within 60 days of the Termination Date"; (3) "continue[] coverage for [Pearson] and his dependents under any health, medical, dental or vision program or policy on the same basis as active employees, at the rates applicable to active employees" for a period of two years; and (4) "make available to [] Pearson office space in a building" for two years. (*Id.* at 1-2.)

Pearson admits Valeant "initially satisfied, and is currently satisfying, some of its obligations under the Separation Agreement." (ECF No. 1 ¶ 20.) Valeant has paid Pearson the pro-rated bonus for 2016, paid Pearson the $9 million severance payment, provided and indicated in writing through counsel that it will continue to provide insurance coverage, and provided and indicated in writing that it will continue to provide office space and administrative assistant and IT support to Pearson. (*Id.*) However, Pearson contends Valeant has not complied with the equity compensation awards provision in accordance with Section 3(d) of the Separation Agreement. (*Id.* ¶ 21.) Pursuant to Section 3(d) of the Separation Agreement, Valeant is required to treat the equity compensation awards in accordance with Section 9(c) of the 2015 Employment Agreement, which states, in part, Valeant "shall pay to [Pearson] any Accrued Compensation." (*Id.* ¶ 23; ECF No. 1-

3

1, Ex. A at 10.) The Separation Agreement also governs consulting services Pearson agreed to provide to Valeant following his termination and the compensation he would receive for providing those services. (ECF No. 1-1, Ex. B at 2-3.) Pearson argues Valeant failed to deliver Pearson's equity compensation awards and failed to pay him for the remainder of the Initial Consulting Period. (ECF No. 1 ¶ 49.)

Notably, the Separation Agreement does not include an arbitration provision, but contains a "Governing Law" provision. (ECF No. 1-1, Ex. B at 5.) The Separation Agreement also includes an "Entire Agreement" provision, stating:

> This Agreement sets forth the entire agreement between [] Pearson and Valeant concerning the termination of [] Pearson's employment and his service as a consultant to Valeant, and supersedes any other written or oral promises concerning the subject matter of this Agreement, including without limitation, those set forth in the 2015 Agreement (except to the extent the provisions of the 2015 Agreement survive by their terms or the terms of this Agreement). No waiver or amendment of this Agreement will be effective unless in writing, refers to this Agreement, and is signed by [] Pearson and Valeant's Chief Executive Officer.

(*Id.*)

On March 27, 2017, Pearson filed a complaint alleging Valeant breached the Separation Agreement and violated the New Jersey Wage Payment Law. (*See* ECF No. 1.) On May 26, 2017, Valeant filed a Motion to Compel Arbitration and Dismiss the Proceedings. (ECF No. 7.) Pearson opposes the Motion. (ECF No. 14.)

## II.    LEGAL STANDARD

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehouseman & Helpers of Am.*, 812 F.2d 91, 94 (3d Cir. 1987) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*,

4

363 U.S. 574, 582 (1960)). The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA"), directs federal courts to compel arbitration of claims "arising out of" a valid agreement to arbitrate. 9 U.S.C. § 2. The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable," subject only to traditional contract principles. 9 U.S.C. § 2; *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citations omitted) (explaining the FAA favors arbitration agreements and "requires courts to enforce agreements to arbitrate according to their terms"). The FAA provides that contract provisions manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 24 (quotations omitted). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. . . ." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 654 (1986).

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006). In considering the first inquiry, the court must "apply the relevant state

5

contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). Per the second inquiry, courts are required to apply a "presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 288 (2010). *Granite Rock* precludes application of the FAA's presumption of arbitrability before it is determined whether there is a "validly formed and enforceable arbitration agreement." *Id.* [1]

### III. DECISION

Valeant argues it entered into an agreement to arbitrate disputes with Pearson, and as such, this Court must dismiss Pearson's complaint in favor of arbitration. (*See* ECF No. 7-1.) Specifically, Valeant contends the 2015 Employment Agreement required the parties to arbitrate the claims Pearson brought against it, and that the arbitration provision remained in effect even after the parties entered into the subsequent Separation Agreement. (*Id.* at 11-19 and ECF No. 19 at 4-14.) Valeant further argues the Separation Agreement did not "entirely supersede" the 2015 Employment Agreement through its merger clause. (*See* ECF No. 19 at 4-14.)

Pearson disagrees. Pearson argues that, at the time the employment relationship terminated, there was no valid agreement to arbitrate because he signed a new agreement, the Separation Agreement. (ECF No. 14 at 6-12.) Furthermore, because the Separation Agreement did not include

---

[1] As articulated below, this case concerns a dispute about whether a "validly formed . . . agreement" has been made. *Id.* at 301. Therefore, the Court's "determination must in turn be based on an examination of the validity of the [Separation Agreement] and its effect on the rights and obligations of [Pearson and Valeant]." *Flexi-Van Corp. v. Orzeck*, No. 88-5015, 1988 WL 188324, at *2 (D.N.J. Dec. 29, 1988).

an arbitration clause and included a merger clause, Pearson argues the arbitration agreement from the 2015 Employment Agreement was not incorporated into the Separation Agreement, or, alternatively, that the 2015 Employment Agreement was superseded by the Separation Agreement. (*Id.*)

Here, the parties do not dispute the scope of the 2015 Employment Agreement arbitration provision, if it were held valid. (See ECF No. 14 at 5-6.) Instead, Pearson and Valeant disagree as to whether and to what extent the 2015 Employment Agreement was superseded by the Separation Agreement. Accordingly, this Court must only determine whether or not a valid agreement to arbitrate exists in light of the Separation Agreement, which does not contain an arbitration provision. If a valid arbitration agreement exists, this matter is dismissed and the parties are compelled to arbitrate their issues.

In considering the first inquiry, courts must "apply the relevant state contract law to questions of arbitrability." *Aliments Krispy Kernels, Inc.*, 851 F.3d at 288. The parties agree New Jersey law applies to the Separation Agreement. (ECF No. 14 at 6.) Pursuant to New Jersey law, "[a]n arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur*, 81 A.2d 1, 4 (N.J. 1951) (citations omitted). "[T]he duty to arbitrate . . . [is] dependent solely on the parties' agreement." *Cohen v. Allstate Ins. Co.*, 555 A.2d 21, 23 (N.J. Super. Ct. App. Div.), *certif. denied*, 536 A.2d 846 (N.J. 1989). The determination as to whether such a duty exists "rests solely on the parties' intentions as set forth in the writing." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 881 (N.J. 2002). "[A]n arbitration clause may be modified or superseded." *Wein v. Morris*, 944 A.2d 642, 648 (N.J. 2008). As such, parties may waive their right to arbitrate in certain circumstances. *See id.* However, waiver cannot be presumed. C*ole v. Jersey City Med. Ctr.*, 72 A.3d 224, 230 (N.J. 2013). An agreement to

7

arbitrate a dispute "can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." *Spaeth v. Srinivasan*, 959 A.2d 290, 294 (N.J. Super. Ct. App. Div. 2008).

Under New Jersey law:

> The general rule is that a subsequent contract covering the same subject matter and made by the same parties, but containing terms inconsistent with the former contract so that the two cannot stand together, rescinds, supersedes and substitutes for the earlier contract and becomes the only agreement on the part of the parties on the subject matter.

*Kant v. Seton Hall University*, No. 03–6135, 2008 WL 65159, *7 (D.N.J. Jan. 4, 2008) (quoting *Rosenberg v. D. Kaltman & Co.*, 101 A.2d 94, 96 (N.J. Super. Ct. Ch. Div. 1954)). "[H]owever, such a finding would only be warranted in the circumstance where the two contracts in question, read together, deal with the exact same subject matter and are so inconsistent that though not explicitly expressed, it was obviously the intent of the parties that the latter supersede the former." *Doyle v. Northrop Corp.*, 455 F. Supp. 1318, 1332 (D.N.J. 1978); *Dieckman v. Walser*, 168 A. 582, 583 (N.J. 1933) ("The executed contract supersedes all prior negotiations and agreements, where the last contract covers the whole subject embraced in the prior one. But where the stipulation is to do a series of acts at successive periods, or distinct and separable acts to be performed simultaneously, the executory contract becomes extinct only as to such of its parts as are covered by the conveyance.").

Courts have found that an arbitration provision in a prior agreement is superseded by a later agreement without an arbitration provision only if the subsequent agreement contains an unambiguous *complete* integration or merger clause. *See Flexi-Van Corp.*, 1988 WL 188324, at *3; *Rezac v. JMK Auto Sales, Inc.*, No. A-0931-11T1, 2013 WL 1907739, at *4 (N.J. Super. Ct. App. Div. May 9, 2013); *Alliancebernstein Investments, Inc. v. Eschert*, No. A-5420-09T4, 2011

8

WL 1345026, at *6 (N.J. Super. Ct. App. Div. Apr. 11, 2011). Naturally, therefore, courts will enforce pre-existing arbitration agreements when a subsequent agreement neither addresses the issue of arbitration nor includes a *complete* merger or integration clause. *Local 221-G Bakery v. Quaker Mfg., LLC*, 108 F. App'x 48, 50 (3d Cir. 2004); *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 146 (D.D.C. 2014); *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, No. 13–797, 764 F. Supp. 3d 210, 215, 2014 WL 4099289, at *4 (2d Cir. Aug. 21, 2014) ("In this Circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration . . . ."); *Pelletier v. Yellow Transp., Inc.*, 549 F.3d 578, 581 (1st Cir. 2008) ("Thus, the merger clause, which precludes agreements over the parties' 'right to terminate,' does not nullify the [dispute resolution agreement], which only deals with the mechanisms for resolving disputes."); *Ramirez–Baker v. Beaser Homes, Inc.*, 636 F. Supp. 2d 1008, 1016 (E.D. Cal. 2008) ("Absent any showing that [a party's] written Arbitration Agreement [ ] was either expressly or implicitly inconsistent with his arbitration obligation under [separate agreement], [a party] may not rely on the written employment agreement's silence about dispute resolution to establish that such agreement superseded his [separate agreement] to arbitrate." (citation omitted)).

In *Local 221-G Baker*, the Third Circuit held that an arbitration provision is incorporated by reference where an agreement is not "completely superseded." *Local 221-G Bakery*, 108 F. App'x at 50. In that case, the parties entered into a Collective Bargaining Agreement, which contained an arbitration clause. *Id.* at 49. Subsequently, they entered into a Closure Agreement, which provided:

> [T]he November 3, 1997 to October 29, 2000 Collective Bargaining Agreement ("Current CBA") between [Quaker] and Union is superceded [sic] by this Closure Agreement. The current CBA is amended as shown in Paragraph 28 below. The remaining

9

> provisions of the current CBA are incorporated by reference herein and are made a part of this Closure Agreement. To the extent that any remaining provision in the current Collective Bargaining Agreement conflicts with the terms of this Closure Agreement, the terms of the Closure Agreement will prevail.

*Id.* at 50. The Closure Agreement did not contain an arbitration clause and Paragraph 28 was unrelated to arbitration or grievance procedures. *Id.* The court found "the [Closure Agreement], by its plain terms, incorporates section 3.04 (entitled "Grievance Procedure") of the [Collective Bargaining Agreement] to the extent that this section does not contradict any other [Closure Agreement] provision. *Id.* The Court rejected Quaker's argument that no arbitration obligation existed under the Closure Agreement because the Closure Agreement "contain[ed] clear language indicating that the [Collective Bargaining Agreement] was not completely superceded [sic] by the [Closure Agreement]. Interpreting the plain language of the [Closure Agreement], the [Collective Bargaining Agreement's] arbitration provision is incorporated by reference, except where it specifically conflicts with the [Closure Agreement]." *Id.* As such, the Third Circuit found the "arbitration provision in the [Collective Bargaining Agreement] survive[d] to the extent that it [did] not conflict with the provisions of the [Closure Agreement]." *Id.* In that case, the Closure Agreement explicitly restricted arbitration in certain instances. *Id.* Therefore, the court remanded the case for further proceedings on whether the Closure Agreement limited arbitration of disputes concerning payment of severance bonuses. *Id.* at 51.

*Ryan* further supports *Local 221-G Baker* and is factually similar to this case. In *Ryan*, Ryan worked for Buckley Kolar, LLP as a staff attorney and as a condition of his employment, he entered into an agreement that required arbitration as the exclusive remedy for all claims and disputes relating to his employment at the firm. *Ryan*, 69 F. Supp. 3d at 142. After being passed over for promotions, Ryan was informed that he was being terminated. *Id.* at 143. He was presented

with a separation agreement, which granted him continued medical benefits and severance pay, provided he signed a release of claims against his current employer, which he signed. *Id.* The severance agreement also contained a merger clause stating:

> This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements or understandings between them pertaining to such subject matter. There are no written or oral understandings, promises, representations, or agreements directly or indirectly related to this Agreement. No modification, revision, addition to, or alteration of this Agreement will be binding unless in writing and signed by Employee and the Firm.

*Id.* The severance agreement did not provide any forum to resolve disputes arising out of the severance. *Id.* Following his termination, Ryan filed this action alleging his termination was the result of age discrimination, and Buckely Kolar, LLP moved to dismiss and compel arbitration. *Id.* The court determined the merger clause in the severance agreement was "expressly limited to the 'subject matter of' the Separation Agreement" and that the Separation Agreement only concerned the employment law claims waived and released by Ryan, but was silent as to the forum for the resolution of those claims. *Id.* at 145. Therefore, it concluded "the Arbitration Agreement (which mandates the forum for the resolution of claims) concerns a distinct subject matter from the Separation Agreement (which addressed the employment law claims of the defendant)." *Id.* at 145-46. As a result, the court found the Arbitration Agreement survived the Separation Agreement.

This case is no different than *Local 221-G Baker* and *Ryan*. The Separation Agreement, by its own terms, does not completely supersede the Employment Agreement; it only "supersedes any other written or oral promises concerning the subject matter of" the Separation Agreement. The arbitration provision in the 2015 Employment Agreement clearly concerns a distinct subject matter from the Separation Agreement, which is silent as to dispute resolution. The two contracts, when read together, do not deal with the exact same subject matter, nor are they "so inconsistent that

11

though not explicitly expressed, it was obviously the intent of the parties that the latter supersede the former." *Doyle*, 455 F. Supp. at 1332. Therefore, arbitration is beyond the scope of the "subject matter" of the Separation Agreement, and the arbitration provision in the 2015 Employment Agreement must survive.

Pearson's reliance on *Flexi-Van Corp.*, *Rezac* and *Borough of Atl. Highlands v. Eagle Enterprises, Inc.*, 711 A.2d 407, 408 (N.J. Super. Ct. App. Div. 1998) is misplaced, because all of these cases involve complete merger or integration clauses. In *Flexi-Van Corp.*, the Court determined the May 12, 1982 Settlement, which contained an arbitration provision, was superseded by the parties' October 16, 1987 Release Agreement, which did not contain an arbitration provision. *Flexi-Van Corp.*, 1988 WL 188324, at *2-3. The October 16, 1987 agreement stated Flexi-Van agreed to pay Orzeck a lump sum in "full and complete satisfaction of the obligations owed to him under the terms of Paragraph 3 of the Settlement Agreement" and, most significantly, that Flexi-Van "will have no further obligations to him under the terms of the Settlement Agreement." *Id.* at 1. The Court found:

> When Flexi-Van and Orzeck entered into the October 16, 1987 Release they were free to add a provision which would have directed that any disputes under the release would be submitted to arbitration. That they did not suggests that Flexi-Van did not intend or reasonably believe that it would be forced to arbitrate disputes under the October 16, 1987 agreement. Furthermore, this Court finds that the conduct of the parties and *the words of the release* demonstrate that the October 16, 1987 release was meant to supersede and terminate the original May 12, 1982 settlement agreement and its arbitration provision. Thus, since the parties' current relationship is governed by the October 16, 1987 Agreement, Orzeck cannot harken back to the May 12, 1982 Settlement Agreement for authority to submit his current dispute with Flexi-Van to arbitration.

*Id.* at 3 (emphasis added).

In *Borough of Atl. Highlands*, the court determined

> whether a clause evidencing an agreement to arbitrate all claims arising out of or related to the parties' construction contract remained viable after the parties entered into a subsequent agreement acknowledging that the construction contract was complete, that the subsequent agreement "constitute[d] full and final satisfaction of all claims for compensation," and that "neither party ha[d] any further claims for compensation or damages against the other," subject only to the retainage being held pending satisfactory completion of certain repair items.

711 A.2d at 408. It found the original contract, which included the arbitration clause at issue, was knowingly superseded by the final agreement, which provided that: "[T]he parties agree that [the] Contract is completed and this Agreement constitutes full and final satisfaction of all claims for compensation and neither party has any further claims for compensation or damages against the other." *Id.* at 410. The court stated it was "at a loss as to how [it] might interpret this unambiguous language to mean anything other than that the original construction contract was to be regarded as history." *Id.*

In *Rezac*, the parties entered into three agreements, but only the first agreement contained an arbitration clause. *Rezac*, 2013 WL 1907739, at *4. The court found the first agreement was "explicitly superseded by the terms of the second agreement," which stated: "This lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded." *Id.* These cases, unlike the case before the Court, found that the arbitration provisions in the prior agreements were superseded by a later agreement without an arbitration provision because the subsequent agreements contained unambiguous *complete* integration or merger clauses.

Pearson's arguments regarding the Separation Agreement's silence as to arbitration, the 2015 Employment Agreement's exclusion of an express survival clause in the arbitration provision, and the Separation Agreement's inclusion of a "Governing Law" provision even though

13

it included one in the 2015 Separation Agreement, are inapposite. (ECF No. 14 at 6-12.) "[P]arties may waive their right to arbitrate in certain circumstances," however "[w]aiver is never presumed." *Cole*, 72 A.3d at 230. An agreement to arbitrate a dispute "can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." *Spaeth*, 959 A.2d at 294. There is no clear and convincing evidence that the parties chose to seek relief in a different forum. A review of the Separation Agreement clearly demonstrates it only intended to supersede "any other written or oral promises concerning the subject matter of this Agreement." (ECF No. 1-1, Ex. B at 5). Although the 2015 Employment Agreement articulates six provisions that would expressly survive the 2015 Agreement, Sections 2(a), 2(d), 4(d)(6), 12(e) (saving all of Section 12), 13(d) (saving all of Section 13) and 15(d), and the Separation Agreement includes references to additional provisions in the 2015 Employment Agreement that also survived, the parties unambiguously contracted to save the arbitration clause when they decided not to draft a complete merger clause. (*See* ECF No. 1-1, Exs. A, B); *see also Ryan*, 69 F. Supp. 3d at 142; *Local 221-G Bakery*, 108 F. App'x at 50. The parties chose to include the limiting phrase "concerning the subject matter of this Agreement," and the Court cannot and will not ignore it. *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (stating courts should "endeavor to avoid ignoring certain words or reading the contract in such a way as to make any words 'meaningless.'"). Contrary to *Flexi-Van Corp.*, the words of the merger clause do not demonstrate that the Separation Agreement was meant to supersede and terminate the 2015 Employment Agreement in its entirety. *Flexi-Van Corp.*, 1988 WL 188324, at *3. Because the parties do not dispute the scope of the arbitration clause and the Court finds the 2015 Employment Agreement arbitration clause valid, Valeant's Motion to Compel Arbitration and Dismiss the Proceeding is **GRANTED**.

**IV.   CONCLUSION**

For the reasons set forth above, Valeant's Motion to Compel Arbitration and Dismiss the Proceeding is **GRANTED** and the case is **CLOSED.** An appropriate Order will follow.

**Date:** December 20, 2017                                        */s/ Brian R. Martinotti*
                                                                              **HON. BRIAN R. MARTINOTTI**
                                                                              **UNITED STATES DISTRICT JUDGE**